Johnson, J.
The object of this bill was, in part, to obtain an account from the defendants of the rents and profits of the estate of the lunatic committed to their management; but the report of the commissioner, on which the Circuit Court decree is founded, is so barren of facts, that the Court has felt at some loss to see the application of the questions that have been raised here, or to form any judgment as to the merits of the case. The report consists rather of a deduction from facts, than of facts themselves. It states, for instance, that at the time the defendants took possession of the estate it was in great confusion ; and that in renting the lands, and hiring the negroes, the committee acted for the best: and if this be true, it may be that the loss ought to be borne by the estate; for the rule very clearly is, that the defendants ought not to be charged, unless they have been guilty of some degree of negligence. But I cannot consent to lend my sanction to a judgment, without being able to see that it is founded in light; and more especially where, as in this case, there is great reason to suspect that too much indulgence has been shown to the defendants, and that in carrying into effect a rule intended for the protection of trustees, and others acting in a representative character, injustice may have been done to the complainant. Thus it is said, that the estate was in confusion, and that the defendants in hiring the lands and negroes to Pope acted for the best: but the object of appointing a committee was to reduce the estate to order; and the act of letting the lands and negroes, was a single act, in which I can conceive of no insurmountable difficulty : and if Pope was, as the evidence seems to indicate, insolvent at the time, it would be difficult to persuade any one, that trusting him for that amount was acting for the best. It may be, that the facts justify the conclusion at which the commissioner has arrived ; but they do not apppear in his report, and the inference necessarily is, that they do not exist. The decree of the Circuit Court must therefore be reversed, and the case referred back to the commissioner to ascertain the facts.
It does not appear from the report of the commissioner that any *39 evidence was offered as to the solvency, or insolvency of Pope, at the time that the defendants trusted him ; and one of the questions here raised is,-whether the proof on the subject ought to have come from the complainant, or the defendants. The fact being ascertained, that the defendants were in possession of the lunatic’s estate, prima fade they were bound to account for the rents and profits, or to show some reason why they should not. If under the best management the estate had proved unproductive, that would have been sufficient; or, as more directly applicable to the case, if they had shewn that they had trusted it to one in good credit, but who ultimately proved insolvent, that might have proved sufficient. But I take it as an universal rule, that where the presumption of liability attaches, it is incumbent on him to be charged to show matters of excuse. He who alleges the affirmative of any proposition is bound to prove it, for the obvious reason, that the mode of proof is more simple and direct; and this, although it may imply a negative, instances of which aré given in the hooks, more especially, where, from the circumstances, he who seeks to support his cause must be supposed to be cognizant of it. 1 Stark Ev. 376, 7, 8, Dickson v. Evans, 6 T. R. 57. The possession of the lunatic’s estate per se, rendered the defendants liable to account for rents and profits. If thatfact, and nothing else, had been proved, there cannot be a doubt, that they would have been hound to pay the value; for indulgent as the law is to persons acting in a fiduciary character, it is not charitable enough to presume that they have properly disposed of a fund, without any account from them. They allege the affirmative, then, when they offer matter by way of excuse ; and to whom can the circumstances be so well known as to those who were the principal actors % Surely not the lunatic, nor those who claim under him, and who, at the time, may neither have had, nor felt ah^r interest in it. On every principle then, the defendants were bound to furnish the proofs.
In the present state of the case, the Court have not thought proper to decide upon the question raised, whether the defendants had, or had not, the right to lease the lands of the lunatic; hut I will observe, passingly, that I incline to think, that upon investigating that doctrine, it will be found, that the only restraint imposed upon the committee -operates to prevent their binding the lunatic *40 a^ter his restoration, and that letting out the land from year to year, is no violation of the rule. Without this power it is not difficult to imagine a case, in which they would not only be very unproductive, hut a charge : and I can conceive of no motives of public policy, which would prohibit it. It is therefore ordered, and decreed, that the decree of the Circuit Court be set aside, and that the case be referred back to the commissioner, to ascertain the facts agreeably to the foregoing rules, and that he report thereon to the Circuit Court.
Colcock, J. concuned.
Richardson, J.
sitting for
Nott, J.*
I am of opinion that the case ought to be sent back, although I Jo not wish to express any opinion on the other points.

Decree reversed.

The right of the complainant to partition of the lunatic’s estate depended upon the construction of a limitation over contained in the will of his father, and was settled by the decree on a former appeal in this case. The judgment of the Court on that occasion, and the opinions delivered, in two other cases, involving analogous questions, have been frequently referred to ; and as they have not hitherto been reported, they' are here subjoined.